**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 25 2013, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RANDY J. SPITAELS**
Kindig & Sloat, PC
Nappanee, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TAMARA DOWNIE, formerly TAMARA REED, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1208-DR-344 |
| | ) | |
| JASON REED, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0307-DR-153

**February 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Tamara Downie ("Mother") appeals the trial court's order modifying child support. Mother raises three issues, which we revise and restate as whether the trial court abused its discretion in determining that neither she nor Jason Reed ("Father") is required to pay any amount of child support. We affirm.

FACTS & PROCEDURAL HISTORY

Mother and Father have two children together, A., born in March 1998, and H., born in May 2000. The trial court's chronological case summary (the "CCS") shows that a hearing was held on September 17, 2010, at which the court fixed Mother's child support obligation in the sum of forty-nine dollars per week. On September 30, 2011, the court entered an order awarding custody of H. to Mother and noting that the parties agreed regarding placement of H. with Mother and that the issue of support remained unresolved.

On October 18, 2011, Mother filed a verified motion to modify child support and health insurance order. In the motion, Mother noted that she was currently subject to an order to pay child support of forty-nine dollars and that Father was subject to an order requiring him to maintain health insurance on both children, argued that there had been a substantial and continuing change in circumstances which makes the existing weekly support and health insurance orders unreasonable in that Mother was awarded custody of H. on September 30, 2011, and that Father failed to maintain health insurance for the children, and requested the court to enter an order providing that Mother shall maintain health insurance coverage for the children and requiring Father to pay weekly child support to Mother in accordance with the Indiana Child Support Guidelines (the "Support

Guidelines"). The court held a preliminary hearing on November 18, 2011, and ordered Mother to maintain health insurance for H. and Father to maintain health insurance for A. pending further order of the court.

On January 4, 2012, the court held an evidentiary hearing on Mother's October 18, 2011 motion to modify support at which the parties presented evidence and arguments. Mother was represented by counsel, Father represented himself, and an attorney for the State appeared. At the hearing, Mother introduced a proposed child support obligation worksheet, which she stated was filed in September 2010 and which indicated that her weekly gross income was $290 and that Father's weekly gross income was $800. Mother testified that she earned $250 from her employer while working part-time and that the $290 amount on her proposed support worksheet was her potential income if she earned minimum wage for forty hours per week. Mother testified that, in September 2010, Father's income was $800 and that Father provided health insurance coverage for the children. Mother testified that circumstances had changed since September 2010 and that H. had lived with her starting on September 11, 2011. Mother testified that since the previous court date Father had provided A. with health insurance coverage through Hoosier Healthwise. Mother also testified that, as of the date of the hearing, she provided health insurance coverage for H. and dental insurance coverage for both A. and H. and that the insurance premiums were withheld or deducted from her current husband's paycheck. Mother introduced a copy of her paycheck which showed that no amounts were withheld or deducted from her paycheck to pay insurance premiums.

Mother testified that Father quit his employment at Summit Ridge Automotive, where he earned $800 per week, and had started a business. Mother indicated that she was asking the court to use the amount of $800 per week as Father's income for child support purposes and testified: "When I quit my job, . . . the state and the Court still have held me at my standard of what I was making because I willfully quit my job. I quit my job to go to school . . . and the same as [Father] quit a job he was making good money . . . ." Transcript at 45. Mother introduced an exhibit showing a CCS entry dated January 17, 2006, which indicated that the court had found that Mother quit working and was attending school and that support should be based on Mother's ability to earn and fixed her income based upon her earnings for 2004.[1]

On cross-examination, Mother testified that she worked for Downie Auto Sales, which is owned by her current husband, was paid a salary of $250 per week, and that she drove her current husband's vehicle, which was titled in the dealership's name. Mother introduced business records obtained from Summit Ridge Automotive which included Father's 2010 W2 form and 2010 payroll history, which showed that the last week worked by Father ended on November 26, 2010, and that until that date Father earned $800 per week.

---

[1] The CCS entry also provided in part:

> Prior to 01-17-06 hearing the weekly orders of support were $285.00 to 2-13-04, $422.42 beginning 02-20-04 and $103.62 beginning 07-17-05. The order increasing support to $422.42 per week was entered 07-15-05 creating an arrears in addition to the one entered of record as of 02-20-04. That order was reduced to $103.62 based on wife's testimony that she was on a salary of $300.00 per week as her only income and would provide free day care for the children. Court finds wife misstated her income when she testified she was only receiving $300.00 per week. Wife quit working and is attending school at this time.

Petitioner's Exhibit 7.

Father testified regarding "the 2006 documents" that "the reason that [Mother] was held to those standards [was] because that was the period of time where she was found to be fraudulent for income verification, and also served jail time for nonpayment of child support during those proceedings," that "[o]bviously, that was a long time ago, and we're in the current, and my income isn't what it used to be and neither is hers," and that "[s]o I think that [the court] should try to use the most current information from both parties if we're going to renegotiate a child support order. I made several proposals to them, and they denied all of them." Id. at 52-53.

Father testified that his "income is going to be $290 per week" and that "it has been established, but it has not been paid out to [him] yet." Id. at 53. Father testified that he was "in the process with the state of filing for all [his] proper tax numbers so that that income can be recorded and taxed properly through the state." Id. Father testified:

> I quit my job at Summit Ridge Automotive due to I was hired as a management position. That position was not granted to me after eight months of working there. So I had the opportunity to start my own business. So I left that job to start my own business, and I wasn't able to open my new business until approximately the second week of May. It took six months to get everything in order and be able to open the doors, and I've been working there ever since. . . .
>
> I've been open since May, and I've been going through the prompts of getting the business set up, and the payroll has not been set up yet, but my other tax ID number is. I needed additional information that I wasn't aware of, and I just applied for the numbers the other day when I was aware that I needed to get them to start processing payroll. I'm the only employee. So it's not like I have to pay . . . ten people.

Id. at 53-54. The court asked the source of Father's money to support himself and A., and Father testified that he "had to use [his] personal savings and sell personal property," that he receives "assistance for food and medical care," and that he is "trying to get back

5

on [his] feet." Id. at 54. The court asked "[s]o you left an $800 job for a job paying nothing until May, and in May you may have established your income at [$]290 or not," and Father testified "[t]hat's correct . . . but I left the job because I wasn't . . . working in the position that I was hired for." Id. at 55. The court stated "[w]ell, you quit," and Father responded "Yeah. To move on, because I had the opportunity to move . . . ." Id. The court asked if Father "could have stayed" and "chose not to," and Father answered affirmatively. Id.

On cross-examination, Father testified that his accountant said that the business could afford to pay him a minimum wage salary. Father also indicated that no documents existed evidencing his 2011 gross income. Mother introduced Father's 2010 tax return. Father testified that he submits his records to his accountant every month, that the accountant advises him on how much he can afford to pay himself, and that since the business had just been started "it takes some time to get information established to base things on." Id. at 58-59. Father reiterated that he depleted his savings in the last year and testified that he "sold a Chevy Tahoe for $2,300," which was "documented to the state on [his] Hoosier Healthwise application," that he applied for Hoosier Healthwise in November 2011, that he "was able to survive a year on [his] own personal money until [it] ran out, and then [he] had to apply for assistance [in] November 2011." Id. at 59-60. With respect to health insurance, Father testified that after his employment at Summit Ridge Automotive he could not afford to pay COBRA, that he had custody of both children at the time, and that Mother was "was well aware of it, and never offered any assistance." Id. at 60. Father testified that he believed he could not cover H. through

6

Hoosier Healthwise. Father indicated that he did not pay a premium for coverage of A. through Hoosier Healthwise.

On re-direct examination, Father testified that he was hoping to start paying himself $290 per week by the end of January. Father further testified that his business did not earn a profit in November 2011, that he believed the business "took in approximately $6,000 for the month," that his business expenses were "[p]robably real close to that," and that "I owe people money, and it's . . . kind of complicated to understand so I don't want to misspeak." Id. at 64-65. On re-cross examination, Father indicated that he believed that he incorporated his business in January 2011, that Father and his father were the owners of the business, that Father owned a fifty-one percent share of the business, and that Father operated the business. Father testified that he worked for Summit Ridge Automotive from January 2010 until November 2010, that prior to that he worked as an employee for another company as an automotive technician and manager for approximately ten years, that prior to that he had worked as an employee at Summit Ridge Automotive for approximately four years as an automotive technician, and that prior to that he worked as an employee for another company as an automotive technician for approximately four years. Father indicated that, prior to starting his current business, he had not owned a business but had managed other businesses as an employee.

At the close of the January 4, 2012 hearing, the court stated that it needed additional information, including any tax returns for the 2011 calendar year, to make an informed decision. The court ordered the parties to furnish the court with a copy of any

7

tax return for the calendar year 2011. Mother and Father subsequently filed their respective income tax returns with the trial court.[2] On June 21, 2012, Mother filed a post-hearing memorandum arguing that the evidence justifies the modification of her support obligation, that Father is voluntarily underemployed, and, based upon proposed child support obligation worksheets attached to the memorandum, that Father's weekly support obligation should be set at $122. Mother's memorandum and proposed worksheet related to the calculation of Father's support obligation for H. includes a health insurance premium of forty-six dollars comprised of a health insurance premium for H. of thirty-five dollars per week, calculated as "$150.45/month x 12 mos. = $1,805.40/52 = $35.00/week," and a dental insurance premium for both H. and A. of eleven dollars per week, was calculated as "$48.10/mo. x 12 mos. = $577.20/52 = $11.00/week." Appellant's Appendix at 56 n.1.

On June 22, 2012, the court held a hearing at which Mother appeared represented by counsel, Father represented himself, and attorney James Stewart-Brown appeared for the State. Mother's counsel stated that the premiums for health insurance for H. and dental insurance for A. and H. were then being withheld from Mother's pay rather than her current husband's pay. Father argued that "I'm not sure why [Mother is] carrying dental insurance for [A.] because we have our own insurance and it includes dental, so, she's double coveraging for some reason. I'm not sure why. Her only responsibility is the child that she has custody of. I have custody of [A.], I provide her with all her financial needs and health insurance needs." Transcript at 79.

---

[2] The record does not contain these tax returns.

8

When asked by the court for his comments, Stewart-Brown for the State stated that "there already has been a finding by the Court that Mother previously was voluntarily underemployed," that "I think some of the concerns that Father has [include] the fact that Mother's employer is an insider, she's married to the owner of the business," that the parties "have expressed issues regarding each other's earning capabilities, especially, with Mother being salaried [at] below minimum wage by her husband," that "Father has the same issue on his side" and "was working at a higher paying job and started his own business and that business income is significantly less than his [] previous income," and that "the State's position is that we should be using the same income for Mother and Father, either imputing minimum wage for Mother and Father, to be quite honest, whether there's insurance or not, this is all below minimum wage, or it should be at their respective previous incomes." Id. at 79-80.

Mother argued that the court held an evidentiary hearing on January 4 where Father had the opportunity to raise any issue he desired concerning Mother's income, that "[he] chose not to," that "[h]e chose not to hire counsel," and that "[h]e presented no evidence to support any finding by this Court that [Mother] is voluntarily underemployed." Id. at 81. The court stated that "the big picture includes a hearing in this court, in this case, where [Mother] submitted income showing a very low figure and then as it turned out, she had a whole other series of paychecks coming from the auto sales that was completely unknown by anyone."[3] Id. at 82. Mother argued "there's no

---

[3] The trial court did not indicate the hearing to which it referred; however, as noted above, the CCS entry dated January 17, 2006, indicates that Mother's support obligation had been reduced based on her testimony that her salary was $300 per week and that the court found that Mother had misstated her income.

9

evidence to that effect that that's the case now." Id. Mother further argued that it is not equitable for the court to use potential income for her in a similar circumstance and not to use potential income for Father. The court stated that Father "didn't try to pull the wool over the Court's eyes on having two paychecks coming from the same employer and disclosing only one either" and "[s]o, if you want to talk about equity, we can talk about equity until the cows come home." Id. at 83-84. The court asked the parties if they were willing to give the court sixty days to rule on the support issue, and Mother did not agree. As the parties exited the courtroom, the court called them back before the bench, stated to them that "you started walking out the door and you both started running your mouths," noted that there were a number of people in the courtroom patiently waiting for their cases to be heard, stated that "the two of you are acting like little children who didn't get their way," and asked the parties to apologize, which they did. Id. at 88.

On July 17, 2012, the court entered an order granting Mother's motion. The court found that the change in custody of H. from Father to Mother was a substantial change of circumstance which justified a modification of support and that any modification of support should be retroactive to September 30, 2011. The court also found that "[a]lthough [Mother] opines that [Father] is voluntarily underemployed, some evidence was presented that he left his job at Summit Ridge Automotive Specialists, Inc. for cause," that Father "has since started his own business, Midwest Auto Salvage,[4] and has a reduction of income which he claims is minimum wage of $290.00 per week," and that "[t]he court accepts this contention as true and imputes income to [Father] for the

---

[4] Mother testified that the name of Father's business was Midwest Salvage Auto, but Father testified that the name of his business is now Michiana Auto Sport.

purposes of calculating child support at $290.00 per week." Appellant's Appendix at 31-32. The court further found that Mother "agrees that her income be computed at minimum wage of $290.00 per week." Id. at 32. The court found that A. is in the custody of Father, that Father was providing health insurance coverage for A. through Hoosier Healthwise, that H. was in the custody of Mother, and that Mother was providing health insurance coverage for H. through Blue Cross Blue Shield. The court found that health insurance coverage for A. will be provided by Father and coverage for H. will be provided by Mother. The court then found that "[a]fter reviewing the proposed Child Support Obligation Worksheets submitted by [Mother], in light of the evidence presented to the court, and considering the circumstances as they now exist between the parties, the court declines to implement any of those calculations *per se*," that rather "per the attached worksheets, the court concludes that no child support should be paid by either party to the other," that "[h]ere, the court has adjusted the parenting time credit for each parent to more accurately reflect a true split custody arrangement, and the amount of support each parent would owe the other is the same, $8.00 per week," and that "[a]ccordingly, each calculated child support amount cancels the other out, and neither party is required to pay the other child support." Id. at 32-33.

## ISSUE & STANDARD OF REVIEW

The issue is whether the trial court abused its discretion in determining that neither Mother nor Father is required to pay any amount of child support. We observe that Father has not filed an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less

11

stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error. Zoller v. Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Questions of law are still reviewed *de novo*, however. McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

"We place a 'strong emphasis on trial court discretion in determining child support obligations' and regularly acknowledge 'the principle that child support modifications will not be set aside unless they are clearly erroneous.'" Lea v. Lea, 691 N.E.2d 1214, 1217 (Ind. 1998) (quoting Stultz v. Stultz, 659 N.E.2d 125, 128 (Ind. 1995)). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, Inc. v. Dage-MTL Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied. We give due regard to the trial court's ability to assess the credibility of witnesses. Id. While we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

## ANALYSIS

The modification of a child support order is governed by Ind. Code § 31-16-8-1, which provides in part:

(a)     Provisions of an order with respect to child support . . . may be modified or revoked.

(b)     Except as provided in section 2 of this chapter, modification may be made only:

     (1)     upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

     (2)     upon a showing that:

          (A)     a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

          (B)     the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Mother maintains that the court abused its discretion in declining to find Father to be voluntarily underemployed for purposes of its child support determination and in failing to include certain insurance premium costs incurred by Mother in making its child support determination.

Before addressing Mother's arguments, we note that the Commentary for Support Guideline 6 suggests that child support be computed by completing support obligation worksheets for the children in one parties' custody and again for the children in the other parties' custody.[5] The trial court appeared to adhere to this suggestion in completing separate child support obligation worksheets for A. and H.

_____

[5] Specifically, the Commentary for Support Guideline 6 provides in part:

Split Custody and Child Support. In those situations where each parent has physical custody of one or more children (split custody), it is suggested that support be computed by completing the Child Support Obligation Worksheets in the following manner:

With respect to the court's determination of Father's weekly gross income, Mother argues that in November 2010 Father quit a job where he was earning weekly gross income of $800 and that this amount is in excess of $500 more than what he now professes to make from the business he has since started. Mother asserts that Father's testimony "clearly indicates that [Father] quit his job because he was dissatisfied with the fact that he had not been moved into a management position" and that, while Father stated that he left the job to start his own business, he offered no evidence that he had any plan or design to do so at the time and did not open the business until almost six months after he quit his job. Appellant's Brief at 12.

Support Guideline 3A addresses the definition of weekly gross income for purposes of determining child support. Paragraph 3 of Support Guideline 3A provides:

> Unemployed, Underemployed and Potential Income. If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. If there is no work history and no higher education or vocational training, the facts of the case may indicate that Weekly Gross Income be set at least at the federal minimum wage level.

---

1.  Compute the support a father would pay to a mother for the children in her custody as if they were the only children of the marriage.

2.  Compute the support a mother would pay to a father for the children in his custody as if they were the only children of the marriage.

3.  Subtract the lesser from the greater support amount. The parent who owes the remaining amount pays the difference to the other parent on a weekly basis.

This method of computation takes into account the fact that the first child in each home is the most expensive to support, as discussed in the Commentary to Guideline 1.

Paragraph 2 of the Commentary to Guideline 3A provides in relevant part:

      c.     <u>Potential Income</u>.  Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more. *Obviously, a great deal of discretion will have to be used in this determination. One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. Another purpose is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed.* However, attributing potential income that results in an unrealistic child support obligation may cause the accumulation of an excessive arrearage, and be contrary to the best interests of the child(ren).  Research shows that on average more noncustodial parental involvement is associated with greater child educational attainment and lower juvenile delinquency.  Ordering support for low-income parents at levels they can reasonably pay may improve noncustodial parent-child contact; and in turn, the outcomes for their children.  The six examples which follow illustrate some of the considerations affecting attributing potential income to an unemployed or underemployed parent.

* * * * *

      (2)    When a parent has some history of working and is capable of entering the work force, but without just cause voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income shall be included in the gross income of that parent.  The amount to be attributed as potential income in such a case may be the amount that the evidence demonstrates he or she was capable of earning in the past.  If for example the custodial parent had been a nurse or a licensed engineer, it may be unreasonable to determine his or her potential at the minimum wage level. *Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.*

* * * * *

      d.     <u>Imputing Income</u>.  *Whether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities is also*

15

> *a fact-sensitive situation requiring careful consideration of the evidence in each case.* It may be inappropriate to include as gross income occasional gifts received. However, regular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, may be the basis for imputing income. The marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income.

(Emphases added).

In this case, the record reveals that Father quit his employment at Summit Ridge Automotive, where he earned $800 per week, near the end of November 2010. Father testified that he left Summit Ridge Automotive because he had been hired to fill a management position but had not been granted the position and because he "had the opportunity to start [his] own business." Transcript at 53. The record shows that Father and his father were the owners of the new business, Michiana Auto Sport, that Father owned fifty-one percent of and operated the business, and that Father incorporated the company in January 2011, less than two months after his employment at Summit Ridge Automotive ended. Further, at the time he left Summit Ridge Automotive and started Michiana Auto Sport, Father had worked as an automotive technician for over eighteen years and had managed other businesses as an employee. Father testified that he was in the process of obtaining tax numbers for his company, that he had not set up a payroll system but that he was the only employee, that he used an accountant who advised him on how much he could afford to pay himself and that the business could afford to pay him a minimum wage salary, and that while his business did not earn a profit in

16

November 2011 he believed the business "took in approximately $6,000" for the month and that his business expenses were "[p]robably real close to that." Id. at 64-65.

Moreover, the trial court heard testimony that Mother worked for Downie Auto Sales, which was owned by her current husband and where she was paid a weekly salary of $250, that she drove her current husband's vehicle, currently a Dodge Journey which was titled in the dealership's name, that the vehicle would vary depending on what her husband drove, and that she made no payments on the vehicle. The court heard the arguments of the parties regarding their respective incomes and the comments of attorney Stewart-Brown for the State who noted that Mother was married to the owner of the business where she was employed, that Father's business income is significantly less than his previous income, and that there were issues involving both parties' earning capabilities, and that the State's position was to use the same income for Mother and Father. The court also noted that Mother had previously attempted to mislead the court regarding her weekly gross income.

Based upon the record, and keeping in mind that we place a strong emphasis on trial court discretion in determining child support obligations, we cannot say that the court abused its discretion in declining to impute income to Father for the purposes of determining child support. Accordingly, we affirm the court's ruling on this issue.

To the extent Mother asserts that the court erred in failing to find that Father is judicially estopped from contesting or objecting to the court's use of his potential income in determining his support obligation, we note that Mother does not point to authority, and we are not aware of any, standing for the proposition that, because the court had

17

imputed income to Mother in determining her child support obligation in the past, the court would be obligated to impute income to Father at this time under the circumstances or that Father is estopped or prohibited from objecting to Mother's argument that the court impute income to him. Trial courts make case-by-case determinations regarding imputing income for the purpose of computing child support based upon specific circumstances as they exist or are presented to the court and the court has discretion to impute different amounts of income to the parties based upon the circumstances or change of circumstances. Father was not estopped or prohibited from taking the position that his weekly gross income was minimum wage for the purposes of calculating any child support obligation.

Further, to the extent that Mother argues that the trial court abused its discretion in failing to include certain health and dental insurance premiums paid on behalf of H. and A., we note that at the January 4, 2012 hearing Mother introduced a copy of one of her paychecks, which did not show that any premiums for insurance were withheld or deducted from her paycheck, and testified that the insurance premiums were withheld from her current husband's paycheck. Further, at the June 22, 2012 hearing, while Mother's counsel stated that he had a recent copy of Mother's paycheck showing that the insurance premiums were being withheld from her paycheck rather than her current husband's paycheck, Mother did not introduce any evidence to that effect and no such evidence is in the record before us. When the parties were asked by the court whether they wanted another contested hearing or for the court to make a decision based upon the record, Mother and Father indicated their desire for the court to decide the case based

18

upon the record. As a result, we cannot say that the court abused its discretion in declining to consider a weekly health insurance premium in calculating any child support obligation amount.

## CONCLUSION

For the foregoing reasons, we affirm the court's July 17, 2012 order.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.